UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

VINCENT SEALEY                                                                                            PLAINTIFF

v.                                                                           CIVIL ACTION NO. 3:15cv137-DPJ-FKB

DAVID R. JOHANSON, et al.                                                                         DEFENDANTS

ORDER

This ERISA case is before the Court on Defendant Jackson Lewis P.C.'s ("Jackson Lewis") Motion to Compel Arbitration and [for a] Stay of Proceedings [43]. Neither Jackson Lewis nor Plaintiff Vincent Sealey signed the contract containing the arbitration provision, and for the reasons that follow, the motion is denied.

I.      Facts and Procedural History

The long and winding road that led to the filing of this case began in 2002, when Bruister & Associates, Inc. ("BAI"), following the legal advice of attorney David R. Johanson, established an Employee Stock Ownership Plan ("ESOP"). Between 2002 and 2005, BAI's owner, Herbert C. Bruister, sold 100% of BAI's shares to its employees through a series of transactions with the ESOP. Those transactions ultimately led to the filing of two lawsuits by the Secretary of Labor and two plan participants alleging that the transactions violated various ERISA provisions (the "ERISA lawsuits"). Following a 19-day bench trial on the consolidated cases, the Court entered judgment in favor of Plaintiffs and against Defendants Bruister, Amy O. Smith, Jonda C. Henry, and the Bruister Family Limited Liability Company ("BFLLC") for in excess of $6 million. Following the entry of judgment, the Court awarded the private Plaintiffs an additional $3.1 million in attorneys' fees and expenses.

At the time the ERISA lawsuits were filed, the plan fiduciaries (Bruister, Smith, and Henry), BAI, and the ESOP maintained fiduciary-liability insurance coverage through Defendants Beazley Insurance Company, Inc. ("Beazley") and Axis Insurance Company, Inc. ("Axis"). Bruister and BAI tendered the ERISA lawsuits to Beazley for coverage and defense, and Beazley sent a letter to Johanson reserving Beazley's rights and setting forth its coverage position.

The coverage dispute ultimately led to Bruister, Smith, Henry, the ESOP, BFLLC, and others filing a civil action against Beazley and Axis in this Court in August 2010. The parties to that action—Bruister; Smith; Henry; J. Michael Bruce; Robert Eddy; Southeastern Ventures, Inc. f/k/a BAI; the ESOP and related ERISA plans; BFLLC and other Bruister entities; Arthur J. Gallagher Risk Management Services, Inc.; Beazley; and Axis—settled the coverage lawsuit effective December 1, 2011, pursuant to a Confidential Settlement Agreement and Release (the "Agreement"). Under the Agreement, Beazley and Axis agreed to withdraw their reservations of rights and pay defense costs and any settlement or judgment in the ERISA lawsuits subject to reduced limits of liability under their respective policies. The parties also agreed that Johanson could serve as counsel to the defendants in the ERISA lawsuits.

Around the time that the Agreement was finalized, Johanson and his partner, Douglas A. Rubel, joined the Jackson Lewis law firm, with which they practiced through the entry of judgment in the ERISA lawsuits. Neither Johanson, Rubel, nor Jackson Lewis signed the Agreement. By the time the Court entered its judgment in the ERISA lawsuits, defense fees and expenses incurred by Johanson, Rubel, Jackson Lewis, and local counsel for the ERISA defendants had depleted all available insurance coverage under the Agreement.

On February 27, 2015, Sealey, the successful plan-participant plaintiff in the ERISA lawsuits, filed this action against Johanson, Bruister, Rubel, Jackson Lewis, Johanson Berenson, L.L.P., Beazley, and Axis.  With respect to Jackson Lewis, Sealey asserts the following claims: (1) the Agreement constitutes a prohibited transaction under 29 U.S.C. § 1106(b); (2) Jackson Lewis knowingly participated in ERISA violations; (3) the Agreement is void as against public policy under 29 U.S.C. § 1110; (4) Jackson Lewis committed legal malpractice; and (5) Jackson Lewis committed fraud.  Jackson Lewis answered [42] the Complaint and, relying on an arbitration provision contained in the Agreement, filed this Motion to Compel Arbitration and [for a] Stay of Proceedings [43].  Plaintiff responded [55], and Jackson Lewis filed a Rebuttal [61].  The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Analysis

Jackson Lewis filed its motion pursuant to the Federal Arbitration Act, which provides:

> If any suit or proceeding be brought in any of the Courts of the United Sates upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.  "Arbitration is a matter of contract between the parties, and a court cannot compel a party to arbitrate unless the court determines the parties agreed to arbitrate the dispute in question."  *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998).

> In adjudicating a motion to compel arbitration under the FAA, this court conducts a two-step inquiry.  The first question is whether the parties agreed to arbitrate the dispute in question.  This step involves two considerations:  (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement.  The second question

3

>is whether legal constraints external to the parties' agreement foreclose[] the arbitration of those claims.

*Ford Motor Co. v. Ables*, 207 F. App'x 443, 446 (5th Cir. 2006) (citations and quotation marks omitted). And while the FAA represents a strong federal policy in favor of arbitration, "[t]he federal policy favoring arbitration does not extend to a determination of who is bound because, as stated by the Supreme Court, the purpose of the [FAA] is 'to make arbitration agreements as enforceable as other contracts, but not more so.'" *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1074 n.5 (5th Cir. 2002) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

### A. Contract Terms

The Court must first determine "whether there is a valid agreement to arbitrate between the parties . . . ." *Ables*, 207 F. App'x at 446. In this case, neither Jackson Lewis nor Sealey actually signed the Agreement. Nevertheless, there are times when a nonsignatory like Jackson Lewis may still compel arbitration. And that inquiry begins with the contract language. *See Niolet v. Rice*, 20 So. 3d 31, 34 (Miss. Ct. App. 2009) (citing *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 382 (5th Cir. 2008)).

Paragraph 47 of the Agreement provides as follows:

>Any dispute as to the validity, interpretation of, or performance of breach of any obligation under, or any other issue, claim or controversy described in, or *arising out of*, this Agreement, shall be submitted exclusively to and resolved exclusively in a final and binding arbitration. The *Settling Parties understand and agree* that by submitting to final and binding arbitration, they are waiving any right to a jury trial, will have limited or no ability to conduct discovery, and there will be no appeal from any arbitration award, except under limited and extraordinary circumstances. Any such arbitration shall be initiated and conducted pursuant to the American Arbitration Association's (the "AAA's") Commercial Arbitration Rules. One arbitrator mutually agreed upon by the parties, as applicable, shall preside over the arbitration, which shall take place in a neutral location to be

> selected by the AAA.  The arbitrator shall have no authority to modify this Agreement, or any part thereof, without the mutual consent of the Settling Parties.  The arbitrator shall also have authority to order specific performance, damages or any other remedy available under Mississippi law.  The *Settling Parties agree* that the federal court in the Coverage Lawsuit shall have jurisdiction over any proceeding relating to such arbitration, and may enter judgment on any arbitration award rendered or grant judicial recognition of the award or an order of enforcement.  The *Settling Parties* further agree that this Agreement affects interstate commerce, in that it relates to the business of the *Settling Parties* who are engaged in interstate commerce.  If any party breaches its obligation to arbitrate by filing litigation, the breaching party may be required by the arbitrator to pay the costs, including attorneys' fees, occasioned by that breach.  Moreover, *the Settling Parties agree* that if a party breaches the covenant not to sue contained in this paragraph, the arbitrator shall award damages, including attorneys' fees, against the party that breached the covenant.  Absent such a breach, the costs of arbitration shall be split evenly by the parties to the arbitration, unless otherwise adjudicated by the arbitrator.

Agreement [66] ¶ 47 (emphasis added).  Neither Jackson Lewis nor Sealey was a "Settling Party" under the Agreement, but the ESOP was.

Jackson Lewis describes this language as providing "a broad arbitration provision." Def.'s Mem. [45] at 3.  If true, then it would "only [be] necessary that the dispute 'touch' matters covered by the contract to be arbitrable."  *Smith v. Captain D's, LLC*, 963 So. 2d 1116, 1121 (Miss. 2007) (citation omitted).  But "[b]road arbitration language governs disputes 'related to' or 'connected with' a contract, and narrow arbitration language requires arbitration of disputes that directly 'arise out of' a contract."  *Pennzoil Exploration & Prod. Co.*, 139 F.3d at 1067 (quoted in *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 175–76 (Miss. 2006)); *see also Niolet*, 20 So. 3d at 33.

The instant language applies to claims "arising out of[] this Agreement" without including the "related to" type language.  It is therefore a narrow provision.  And narrow provisions generally do not cover "collateral issues."  *Niolet*, 20 So. 3d at 33.  In other words, "if

5

the clause is 'narrow,' arbitration should not be compelled unless the court determines that the dispute falls within the clause." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1145 n.10 (5th Cir. 1985) (quoting *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 65 (2d Cir. 1983)).

The Agreement controls claims among the "Settling Parties," Jackson Lewis is not a Settling Party, and there is no reference to claims with third parties. Moreover, the claims against Jackson Lewis are collateral to the Agreement. So as a matter of contract construction, the Agreement is too narrow to allow Jackson Lewis, as a nonsignatory, to compel arbitration.

B.      Equitable Estoppel

Though the contract is narrow, that does not end the inquiry. Jackson Lewis alternatively argues that Plaintiff should be equitably estopped from avoiding the arbitration provision. This argument raises a threshold issue regarding choice of law.

1.      Choice of Law

There is no dispute that the FAA applies in this case. But within that framework, courts recognize various forms of estoppel as means for compelling arbitration when not all parties are signatories to the agreement containing the arbitration provision. As to this question, the parties dispute whether the Court should follow Mississippi or federal common law. According to Sealey, the Mississippi standards apply, whereas Jackson Lewis urges a federal standard.

The United States Supreme Court answered this question in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). There, the Court reversed the Sixth Circuit's conclusion that "nonparties to a contract are categorically barred from § 3 relief," holding instead that "traditional principles of state law allow a contract to be enforced by or against nonparties to the

6

contract through [various theories including] . . . estoppel." *Id.* at 631 (citation and quotation marks omitted). The Court stopped short of deciding whether "the relevant state contract law recognizes equitable estoppel as a ground for enforcing contracts against third parties," concluding that the issue could be addressed on remand. *Id.*

The Fifth Circuit considered *Arthur Andersen* in *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, noting that state law applies when considering estoppel in the arbitration context. 748 F.3d 249, 255 (5th Cir. 2014). The Fifth Circuit added, "[c]oincidentally, we recognize that our prior decisions applying federal common law, rather than state contract law, to decide such questions, *see Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000), have been modified to conform with *Arthur Andersen*." *Id.*

*Grigson* is the seminal Fifth Circuit case on equitable estoppel involving claims against nonsignatory defendants, and Jackson Lewis relies heavily on it. But as stated, *Grigson* will not apply if inconsistent with Mississippi law. *Id.*; *see also Growtech Partners v. Accenture LLP*, 118 F. Supp. 3d 920, 946 n.4 (S.D. Tex. 2015) (Rosenthal, J.) (citing *Arthur Andersen* and declining to apply *Grigson* where inconsistent with Texas law).

2.  Application of Mississippi Estoppel Law

Starting with the basics, equitable estoppel in Mississippi "is an extraordinary remedy and should only be invoked to prevent unconscionable results." *Harrison Enters., Inc. v. Trilogy Commc'ns, Inc.*, 818 So. 2d 1088, 1095 (Miss. 2002). It should therefore be "applied cautiously and only when equity clearly requires it." *Id.* (quoting *Bright v. Michel*, 137 So. 2d 155, 159 (Miss. 1962)).

Here, Jackson Lewis is a nonsignatory to the Agreement.[1] While Mississippi did not always recognize a nonsignatory defendant's right to compel arbitration, *see generally Parkerson v. Smith*, 817 So. 2d 529 (Miss. 2002) (McRae, J.), the state eventually adopted various forms of equitable estoppel, beginning with *B.C. Rogers Poultry v. Wedgeworth*, 911 So. 2d 483 (Miss. 2005). In that case, a nonsignatory defendant attempted to compel a signatory plaintiff to arbitrate. The Mississippi Supreme Court acknowledged *Grigson*, finding it "instructive" but not binding, and then explained that *Grigson* establishes two avenues for a nonsignatory to compel a signatory to arbitrate. *Id.* at 491. The first occurs "'when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a nonsignatory.'" *Id*. (quoting *Grigson*, 210 F.3d at 527). The second exists "'when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" *Id*. (quoting *Grigson*, 210 F.3d at 527).

Because the first *Grigson* theory was not an issue in *Wedgeworth*, the court moved to the second *Grigson* theory and rejected it. *Id*. at 492 (citing *Ervin v. Nokia, Inc.*, 812 N.E.2d 534 (Ill. App. Ct. 2004)). Instead, the court held that interdependent-and-concerted misconduct might support arbitration if the interdependent-and-concerted misconduct occurred between a nonsignatory defendant and a signatory with which a "close legal relationship" existed. Otherwise, Mississippi's standard equitable estoppel test applies, which requires detrimental

---

[1] Sealey's status is less clear because he seeks relief for the ESOP, and Bruister signed the Agreement on behalf of the ESOP. But as discussed *infra*, the Court would not permit nonsignatory Jackson Lewis to compel arbitration in either event.

reliance. *Id*. Jackson-Lewis has not established the *Wedgeworth* requirements, and its interdependent-and-concerted-misconduct arguments premised on *Grigson* are nonstarters. It has likewise failed to show detrimental reliance.

But Jackson Lewis also asserts direct-benefit estoppel, which the Mississippi Supreme Court first addressed in *Scruggs v. Wyatt*, 60 So. 3d 758 (Miss. 2011) (en banc). In that case, an attorney (Wyatt) whose law firm was a member of a single-purpose joint venture sued another lawyer (Scruggs) whose firm was also a member of the joint venture, to recover a share of fees that had been distributed under a joint-venture agreement (JVA). Neither Wyatt nor Scruggs had signed the JVA. Nevertheless, the Court, apparently for the first time, adopted a direct-benefit-estoppel theory:

> "Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have *embraced the contract* despite their non-signatory status, but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (quoting *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006)) (emphasis added). *See also Simmons Hous., Inc. v. Shelton*, 36 So. 3d 1283, 1287–88 (Miss. 2010) ("estoppel prevents a party from embracing the benefits of a contract while simultaneously trying to avoid its burdens . . . ."); [*Wash. Mut. Fin. Grp., LLC v.*] *Bailey*, 364 F.3d [260,] 268 [(5th Cir. 2004)] (quoting *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000)) (thus, "estoppel prevents a party from 'having it both ways.'"). According to *Noble Drilling*, "[a] non-signatory can *'embrace' a contract containing an arbitration clause in two ways*: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract *or asserting claims that must be determined by reference to that contract*." *Noble Drilling*, 620 F.3d at 473 (citing *Hellenic*, 464 F.3d at 517–20) (emphasis added).

*Id*. at 767–68. The court explained that the first prong dealing with direct benefits "is termed the 'knowingly exploited' theory of direct benefits estoppel. To satisfy the knowledge requirement, the case law requires that the non-signatory have had actual knowledge of the contract

containing the arbitration clause." *Id*. at 768 n.12 (internal citation and quotation marks omitted).

So following *Scruggs*, nonsignatories can be forced to arbitrate under direct-benefit estoppel. But this case presents an additional question: whether a nonsignatory defendant can invoke the theory. *Scruggs* speaks to this as well. Although the plurality in *Parkerson* opined that a nonsignatory like Jackson Lewis may not compel a signatory to arbitrate, 817 So. 2d at 535, *Scruggs* took a different path. Citing federal precedents, the court held as to Wyatt's claims against the nonsignatory Scruggs:

> In the present case, the arbitration provision in the Katrina JVA is broad, applying to "*[a]ny dispute* arising under or *relating* to the terms of this agreement . . . ." (Emphasis added.) *See MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 176 (Miss. 2006) ("[b]road arbitration language governs disputes 'related to' or 'connected with' a contract . . . ."). Furthermore, . . . Wyatt's claims against Scruggs necessarily require "reference to" the Katrina JVA. Finally, in light of the fact that even Wyatt's Complaint provided that [signatory] SLF, Inc., is "owned 100% by [Scruggs]," this argument is rather dubious. For these collective reasons, this Court concludes that Scruggs, individually, may enforce the arbitration provision.

*Id*. at 771–72 (additional internal citation omitted).

Breaking that down, the *Scruggs* court started the analysis in unison with other Mississippi cases by looking to the terms of the broad arbitration provision. *Id*. By contrast, the arbitration provision in this case is narrow. The *Scruggs* court remained on familiar turf when it noted that Scruggs owned SLF, Inc., the signatory. *Id.*; *see also Wedgeworth*, 911 So. 2d 492 (holding that nonsignatory could compel arbitration if in a "close legal relationship" with a signatory). But the court took a less familiar turn when noting that Wyatt's claims required "reference to" the arbitration-containing contract. *See Scruggs*, 60 So. 3d at 772. In doing so,

10

the Court augmented its holding that a nonsignatory defendant may enforce an arbitration provision with an estoppel-based theory.

*Scruggs* also touches another issue. As mentioned earlier, Jackson Lewis sometimes argues that Sealey is a signatory because he brings his claims on behalf of the ESOP, and Bruister signed the Agreement on behalf of the ESOP. Thus Plaintiff would be a signatory suing a nonsignatory, the circumstance *Grigson* addressed. 210 F.3d at 527. But Jackson Lewis also relies on direct-benefit estoppel, which typically deals with nonsignatory plaintiffs suing signatory defendants, the circumstance *Noble Drilling* addressed. 620 F.3d at 474. At least within the Fifth Circuit, the two tests are not exactly the same. *Compare Noble Drilling*, 620 F.3d at 474 (allowing estoppel when nonsignatory plaintiff "embraces" contract "by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract"), *with Grigson*, 210 F.3d at 527 (allowing estoppel "[w]hen each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, . . . ." (citation omitted)).

In reaching its holding that the nonsignatory, Scruggs, could compel arbitration, the Mississippi Supreme Court did not make these types of distinctions. Instead, it cited *Noble Drilling* and its prior discussion on direct-benefit estoppel—neither of which normally applies to nonsignatory defendants—and simply said that Wyatt's claims against Scruggs were arbitrable, in part, because they required "reference to" the JVA. The "reference to" language appears in both *Noble Drilling* and *Grigson*.[2]

---

[2]It should be noted that Mississippi does not appear to have ever adopted *Grigson*'s language allowing arbitration where claims "presume[] the existence of the written agreement." *Id.* It is mentioned in *Sawyers v. Herrin-Gear Chevrolet Co.*, where the trial court concluded

It may be reading too much into *Scruggs* to suggest that the Mississippi Supreme Court intentionally avoided the distinctions in *Noble Drilling* and *Grigson*, but it raises a bigger point. The labels attached to these theories are at times difficult to apply outside the facts of the reported case. *See Grigson*, 210 F.3d at 527 ("Each case, of course, turns on its facts."). And while the articulations may differ, both Mississippi and the Fifth Circuit share the core policy concerns that drove the *Grigson* and *Scruggs* opinions.

As the Fifth Circuit noted in *Grigson*, "[t]he linchpin for equitable estoppel is equity—fairness." *Id.* at 528. "[T]he result in *Grigson* and similar cases makes sense because the parties resisting arbitration had expressly agreed to arbitrate claims of the very type that they asserted against the nonsignatory." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 361 (5th Cir. 2003). In other words, courts must not allow a plaintiff to "'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Grigson*, 210 F.3d at 527 (quoted in *Scruggs*, 60 So. 3d at 768); *see also Simmons Hous., Inc.*, 36 So. 3d at 1287 ("In the arbitration context, equitable estoppel prevents a party from embracing the benefits of a contract while simultaneously trying to avoid its burdens . . . ."); *Fradella v. Seaberry*, 952 So. 2d 165, 175 (Miss. 2007) ("Because the Seaberrys rely on the document for their breach of contract claim,

---

that the signatory plaintiff's claims "against [the nonsignatory] presumed the existence of her contracts with" a signatory defendant. 26 So. 3d 1026, 1030 (Miss. 2010). But the Mississippi Supreme Court affirmed on other grounds, noting that under *Wedgeworth*, the nonsignatory had a close legal relationship with a signatory, and that the plaintiff "relied on" the agreement with the signatory to make her claims, such that she could not then "deny" the benefit of the arbitration provision. *Id.* at 1039.

they cannot deny Fradella the benefit of the arbitration clause . . . ."). Indeed the name of the theory itself suggests the need to find some direct benefit the plaintiff seeks from the contract while attempting to repudiate the arbitration provisions it contains.[3]

The present case admittedly presents unique facts, and neither the parties nor the Court have found cases squarely on point. But it is not the typical case where a signatory tries to "have it both ways," seeking contract privileges or damages while at the same time renouncing the arbitration agreement. While the Complaint references the Agreement, the equities would look different if, as in cases like *Scruggs*, Sealey ultimately sought benefits under the Agreement. But Sealey is not seeking contract benefits and is not claiming that Jackson Lewis breached the Agreement. He claims instead that the agreement is void and should never have been signed. He specifically faults Jackson Lewis, contending that (1) the Agreement constitutes a prohibited transaction under 29 U.S.C. § 1106(b); (2) Jackson Lewis knowingly participated in ERISA violations; (3) the Agreement is void as against public policy under 29 U.S.C. § 1110; (4) Jackson Lewis committed legal malpractice; and (5) Jackson Lewis committed fraud.

---

[3]The Mississippi Supreme Court has frequently distinguished *Scruggs* where these policy concerns were not present. *See Hattiesburg Health & Rehab Ctr., LLC v. Brown*, 176 So. 3d 17, 24 (Miss. 2015), *reh'g denied* (Oct. 22, 2015) (refusing to apply direct-benefit estoppel noting plaintiff was not "suing to enforce the terms of the [contract], because his claims are not 'directly dependent' on the agreement"); *Pinnacle Trust Co. v. McTaggart*, 152 So. 3d 1123, 1129 (Miss. 2014) ("Unlike Wyatt, the McTaggarts' claims are not 'directly dependent on the [contract containing the arbitration provision.]'"); *Freese v. Mitchell*, Nos. 2012-CA-01045-SCT, 2013-CA-00361-SCT, 2014 WL 1946593, at *6 (Miss. May 15, 2014) (noting that Wyatt's claims "could not be determined without direct reference to the joint-venture agreement"); *see also Nutt v. Wyatt*, 107 So. 3d 989, 993, 3926 (Miss. 2013) ("[W]e found that Wyatt's claims were subject to the arbitration provision of the Katrina JVA, because the claims asserted in Wyatt's complaint averred entitlement to *direct benefits* under the Katrina JVA and were premised upon the Katrina JVA." (emphasis added)).

In this way, the case at least resembles *Simmons Housing, Inc.*, where the plaintiffs initially included a breach-of-contract claim, but offered to drop the claim and pursue "claims . . . based on negligence, strict liability, and products liability." 36 So. 3d at 1288. The court denied arbitration, concluding, inter alia, that "[s]uch claims are not dependent on the terms of the contract." *Id.*

This case likewise resembles *Hill v. G E Power Systems, Inc.*, a Fifth Circuit case decided under *Grigson*, where the plaintiff signed an agreement terminating another contract and then sued nonsignatories to the termination agreement contending that they fraudulently induced the plaintiff to sign it. 282 F.3d 343, 346 (5th Cir. 2002). Claiming that he was duped into signing the termination agreement obviously presumes its existence and "touch[es] matters covered by" it. *Id.* at 349. But that was not enough. Because the plaintiff did not "rely upon the express terms of the Termination Agreement in asserting its claims," the court held that "the first prong of the *Grigson* test [was] not met . . . ." *Id.* at 348–49.

Again, though, each case must turn "on its facts." *Grigson*, 210 F.3d at 527. And as stated, equitable estoppel in Mississippi "is an extraordinary remedy [that] should only be invoked to prevent unconscionable results." *Harrison Enters.*, 818 So. 2d at 1095. It should therefore be "applied cautiously and only when equity clearly requires it." *Id.* (citation omitted). While it would certainly be easier for the Court to simply grant Jackson Lewis's motion, there is nothing unconscionable about allowing Sealey to proceed. Indeed it would be fundamentally unfair for a nonsignatory ESOP participant to lose his right to trial against another nonsignatory under these circumstances. Sealey is not "on the one hand, seek[ing] to hold the nonsignatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but,

14

on the other hand, deny[ing] arbitration's applicability because the defendant is a nonsignatory." *Grigson*, 210 F.3d at 528; *see also Palmer Ventures LLC v. Deutsche Bank AG*, 254 F. App'x 426, 431–32 (5th Cir. 2007) (refusing to apply estoppel and holding "Plaintiffs are not trying to 'have it both ways' because Plaintiffs are not relying on the [agreement] to hold [defendant] liable") (citing *Hill*, 282 F.3d at 346).

As a final note, granting estoppel is a matter of discretion. In *Hill*, the Fifth Circuit noted that the defendants had established the second *Grigson* prong—*i.e.*, the interdependent-and-concerted-misconduct theory. 282 F.3d at 349. Nevertheless, the Fifth Circuit affirmed, noting that "the point of applying [estoppel] to compel arbitration is to prevent a situation that would fly in the face of fairness." *Id*. (citation and quotation marks omitted). And because the district court applied the correct standard and was not clearly erroneous in its factual findings, the Court found no abuse of discretion in denying the motion to compel. *Id*. Granting Jackson Lewis's motion, even assuming it has established the technical requirements for estoppel, would not "prevent unconscionable results"; it would be unfair to Sealey. *Harrison Enters.*, 818 So. 2d at 1095.

III.    Conclusion

The Court has considered all of the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Jackson Lewis's Motion to Compel Arbitration and [for a] Stay of Proceedings [43] is denied. The parties are instructed to contact Magistrate Judge Ball within 10 days of the entry of this Order to set the case for a telephonic case management conference.

**SO ORDERED AND ADJUDGED** this the 29th day of March, 2016.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE