UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

VINCENT SEALEY                                                                                    PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:15cv137-DPJ-FKB

DAVID R. JOHANSON, et al.                                                                   DEFENDANTS

ORDER

This ERISA case is before the Court on two motions filed by Beazley Insurance Company, Inc. ("Beazley"):  its Motion to Dismiss for Lack of Subject Matter Jurisdiction [34] and its Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted [36]. For the reasons that follow, the motion under Rule 12(b)(1) is denied, but the Rule 12(b)(6) motion is granted.

I.      Facts and Procedural History

The factual underpinning of this case began in 2002, when Bruister & Associates, Inc. ("BAI"), following the legal advice of attorney David R. Johanson, established an Employee Stock Ownership Plan ("ESOP").  Between 2002 and 2005, BAI's owner, Herbert C. Bruister, sold 100% of BAI's shares to its employees through a series of transactions with the ESOP. Those transactions ultimately led to the Secretary of Labor and two plan participants filing separate lawsuits alleging that the transactions violated various ERISA provisions (the "ERISA Actions").  Following a 19-day bench trial on the consolidated cases, the Court entered judgment in favor of Plaintiffs and against Defendants Bruister, Amy O. Smith, Jonda C. Henry, and the Bruister Family Limited Liability Company ("BFLLC") for in excess of $6 million.  Following the entry of judgment, the Court awarded the private Plaintiffs an additional $3.1 million in attorneys' fees and expenses.

At the time the ERISA Actions were filed, the plan fiduciaries (Bruister, Smith, and Henry), BAI, and the ESOP maintained fiduciary-liability-insurance coverage through Beazley. Bruister and BAI tendered the ERISA Actions to Beazley for coverage and defense, and Beazley sent a letter to Johanson reserving Beazley's rights and setting forth its coverage position.

The coverage dispute ultimately led to Bruister, Smith, Henry, the ESOP, BFLLC, and others filing a civil action against Beazley in this Court in August 2010 (the "Coverage Action"). Beazley filed a counter claim, in which it asserted that no coverage existed under the Policy. The parties to the Coverage Action then settled effective December 1, 2011, pursuant to a Confidential Settlement Agreement and Release (the "Agreement"). Under the Agreement, Beazley agreed to withdraw its reservation of rights and pay defense costs and any settlement or judgment in the ERISA Actions subject to reduced limits of liability under its Policy. By the time the Court entered its judgment in the ERISA Actions, the reduced insurance coverage had been fully exhausted by defense costs.

On February 27, 2015, Plaintiff Vincent Sealey, the successful plan-participant plaintiff in the ERISA Actions, filed this suit against Johanson, Bruister, Beazley, and others. Sealey asserts four claims against Beazley arising out of its actions with regard to the coverage lawsuit and the Agreement: (1) knowing participation in ERISA violations; (2) breach of the covenant of good faith and fair dealing; (3) breach of fiduciary duty; and (4) fraud. Beazley moved to dismiss [34, 36], Plaintiff submitted a response [59], and Beazley filed reply memoranda [69, 70].[1]

---

[1]After the briefing on the motions was complete, Plaintiff sought and was granted leave to amend; the Amended Complaint was filed on February 24, 2016. Ordinarily, the Court would view the filing of an amended pleading as rendering moot dispositive motions filed in response

II.     Subject-Matter Jurisdiction [34]

Beazley first moves to dismiss the case for lack of subject-matter jurisdiction, asserting that Plaintiff fails to assert a ripe case or controversy under Article III of the Constitution. *See Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) ("A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical."). Beazley says that Plaintiff, suing on behalf of the ESOP, will not have a ripe claim against Beazley until a claim is made against the ESOP that would trigger coverage under the Beazley policy.

The Court finds that Beazley's ripeness argument misconstrues the nature of Plaintiff's claims in this lawsuit. Plaintiff is not complaining that the Agreement depleted policy proceeds that would have otherwise been available in the event some third party sued the ESOP for wrongdoing. Instead, Plaintiff claims that Beazley's handling of the Coverage Action and its entering into the Agreement constituted wrongful, tortious conduct that harmed Plaintiff. Whether the claims are legally cognizable presents a question under Rule 12(b)(6), but the Court cannot say that Plaintiff's claims—as pleaded—are not ripe. The motion to dismiss for lack of subject-matter jurisdiction is therefore denied.

III.    Rule 12(b)(6) Motion [36]

    A.      Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as

---

to a prior pleading. But in this case, Beazley consented to the filing of the Amended Complaint with the understanding that the pending motions to dismiss "will apply to Plaintiff's proposed Amended Complaint" such that Beazley"w[ould] not be required to re-file or re-brief [its] pending Motions to Dismiss or to file any other responsive pleading." Stipulation [80] ¶ 5. In the interest of judicial economy, and under the particular circumstances present here, the Court construes the motions as applying to the operative First Amended Complaint.

true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

    B.    Analysis

        1.    Fraud Claim

In its opening memorandum, Beazley pointed out that Plaintiff fails to attribute any

particular misrepresentation to Beazley, making the fraud claim insufficiently pleaded under Federal Rule of Civil Procedure 9(b). *See U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 328 (5th Cir. 2003). In his response, Plaintiff clarifies the nature of the fraud claim, explaining that Beazley "fraudulently concealed the terms of the Coverage Settlement Agreement with respect to coverage and the reduced policy limits from [Sealey and the other ESOP participants]." Pl.'s Resp. [59] at 23.

"In order to be liable for nondisclosure, a party must have had a legal duty to communicate a known material fact. Thus, nondisclosure in itself, even if fraudulent, does not give rise to a legal claim. The party must have concealed something that he or she was legally required to disclose." *Mabus v. St. James Episcopal Church*, 13 So. 3d 260, 265 (Miss. 2009) (citations omitted).

Plaintiff does not allege any facts that would support a plausible finding that Beazley had a legal duty to disclose, nor does he cite any authority establishing such a duty. Though he observes that the ESOP was insured under the Policy, this was a fiduciary-liability policy, and Beazley dealt directly with the ESOP's lawful trustee. Plaintiff, on the other hand, was not a named insured and was instead a plan participant suing Beazley's insureds. Plaintiff provides no legal basis for concluding that Beazley had a legal duty to directly communicate the existence or terms of the Agreement to Sealey or the other individual ESOP participants. The motion is granted with respect to the fraud claim.

        2.     ERISA Claim

Beazley asserts that Plaintiff's ERISA claim—in which Plaintiff claims Beazley knowingly participated in ERISA violations—fails because Plaintiff seeks only legal, rather than equitable, relief. In the ERISA count of the Complaint, Plaintiff states that "[a]s a proximate

result of [Defendants'] wrongdoing, said Defendants were unjustly enriched and/or otherwise benefit[t]ed from their wrongdoing," and claims that the ESOP "ha[s] been damaged in an amount to be determined at or before trial." Compl. [1] ¶¶ 163–64. In the ad damnum clause, Plaintiff asks that the Court:  (1) require Defendants "to disgorge and restore to the [ESOP] any profits which have been generated as a result of their wrongful conduct," (2) "impose a constructive trust upon all assets and profits received by Defendants . . . from their knowing participation in" ERISA violations, and (3) "grant such further equitable relief to which Plaintiff or the [ESOP] may be entitled, whether or not otherwise specifically demanded." *Id.* at 61–62.

"ERISA § 502(a)(3) only allows claims for the types of equitable relief typically available in equity.  Money damages are not typically available in equity." *Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 363 (5th Cir. 2014). Plaintiff recognizes these limitations and "agrees that he may seek only equitable relief pursuant to [the ERISA] claim." Pl.'s Resp. [59] at 9. But he makes little effort to defend the equitable theories he actually pleaded—disgorgement, constructive trust, and restitution—focusing instead on new theories for estoppel, reformation, and rescission. *Id.* at 9–10.

While Beazley accurately points out that the Amended Complaint does not explicitly seek these equitable remedies, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (reversing dismissal and allowing plaintiff who sought general relief to pursue equitable remedy not specifically pleaded in complaint). On the other hand, "[s]imply framing a claim as equitable relief is insufficient to escape a determination that the relief sought is legal." *Cent. States*, 756 F.3d at 361. So the Court must consider the basis of Plaintiff's claims and the

nature of the remedies sought to determine whether he seeks equitable—rather than legal—relief.  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002).

                a.     Estoppel

Plaintiff generally states in his response that he "seeks to estop Beazley" from relying on the Agreement.  Pl.'s Resp. [59] at 10.  As Beazley noted, there are various forms of estoppel.  And in addition to the ones Beazley mentioned, the Fifth Circuit has allowed estoppel in the ERISA context when the plaintiff establishes "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances."  *High v. E-Sys. Inc.*, 459 F.3d 573, 579 (5th Cir. 2006).

Plaintiff never states which theory supposedly applies.  He likewise fails to offer any legal authority suggesting that he has a valid estoppel claim and points to no facts that would fit within the various estoppel theories.  The Court therefore finds Plaintiff has not pleaded a plausible claim for estoppel as a result of Beazley's alleged knowing participation in ERISA violations.  *Cf. First Inv. Corp. v. Rayner*, 738 So. 2d 228, 233 (Miss. 1999) ("Equitable estoppel . . . is to be used as a shield and not a sword.").

                b.     Reformation

The Court has the power in equity to reform a contract if the plaintiff shows fraud or a mistake in the terms of the contract.  *CIGNA Corp. v. Amara*, 563 U.S. 421, 440–41 (2011).

> Reformation of a contract is ordinarily justified in equity only if there is a mutual mistake of the parties, that is, a variance between their agreement and the instrument intended to express it, or there is a mistake on the part of one of the parties to the contract and fraud or inequitable conduct related to the mistake on the part of the other.  The purpose of reformation is to grant to each of the parties exactly what they intended when their agreement was made.

*U.S. Fid. & Guar. Co. v. Gough*, 289 So. 2d 925, 927 (Miss. 1974).

Here, Plaintiff claims—with no supporting authority—that he is entitled to have the Agreement "reformed so that only the obligation to pay defense costs was reduced, but the obligation to indemnify for liability remained at the original policy limits." Pl.'s Resp. [59] at 10. But the Policy explicitly states that "AMOUNTS INCURRED AS DEFENSE COSTS SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY." Policy [34-1] at 1 (emphasis in original). So Plaintiff is essentially asking the Court to re-write the Agreement on terms more favorable to him, without regard to what the contracting parties intended when they signed it. "While a court may correct a writing which does not accurately reflect the parties' agreement, the court has no power to make contracts for the parties to which they never agreed, or to substitute one contract for another." *Equitable Mortg. Corp. v. Mortg. Guar. Ins. Corp.*, 791 F. Supp. 620, 624–25 (S.D. Miss. 1990) (citation omitted). Plaintiff has not supported his response with legal argument or well-pleaded facts and therefore fails to state a plausible claim for reformation.

    c.  Rescission

As this Court explained in the ERISA Actions, rescission may—in some circumstances—be an appropriate equitable relief for ERISA violations. *Harris v. Bruister*, No. 4:10cv77-DPJ-FKB, 2013 WL 6805155, at *17–18 (S.D. Miss. Dec. 20, 2013). The problem is that, looking at "the substance of the relief sought and the allegations pleaded" in the Amended Complaint, the Court cannot fairly characterize it as asking the Court to rescind the Agreement altogether. *Gearlds*, 709 F.3d at 452. Plaintiff has asked—with no relevant legal authority—that the parties who profited from the Agreement return those profits to the ESOP; he has not asked the Court to return all parties to the Agreement (many of whom are not parties to this lawsuit) to their pre-Agreement positions. *See United States v. Texarkana Trawlers*, 846 F.2d 297, 304 (5th

8

Cir. 1988) ("Rescission . . . attempts to restore the parties to the rescinded contract to the *status quo* that existed before the contract was formed."). The Amended Complaint does not state a plausible claim for rescission.

>	d.	Constructive Trust/Restitution/Disgorgement

Finally, Plaintiff has asked the Court to order Beazley "to disgorge and restore to the [ESOP] any profits which have been generated as a result of [Beazley's] wrongful conduct" and to "impose a constructive trust upon all assets and profits received . . . from [Beazley's] knowing participation" in ERISA violations. Compl. [1] at 61. The disgorgement claim is properly characterized as one for restitution, which "has the goal of making the aggrieved party whole." *S.E.C. v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993).

Plaintiff essentially concedes that he has not yet stated a claim for these remedies, arguing instead that "at this juncture, without the benefit of discovery, it would be premature to conclude that no traceable assets exist." Pl.'s Resp. [59] at 11. A request for discovery is generally not an appropriate response to a Rule 12(b)(6) motion. *See Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 263 (5th Cir. 2008) (holding that "when deciding, under Rule 12(b)(6), whether to dismiss . . . the court considers, of course, only the allegations in the complaint"). That said, "a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibi[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citation omitted). While it looks doubtful under *Knudson*, it is not entirely clear Plaintiff has pleaded his best case on the ERISA claim or that further amendment would be futile—other than as to the reformation claim. The appropriate disposition is therefore dismissal without prejudice.

In sum, Plaintiff's ERISA claim against Beazley does not seek any cognizable equitable

relief. It is therefore subject to dismissal for failure to state a claim. The reformation claim is dismissed with prejudice, the other ERISA claims are dismissed without prejudice to refiling after an appropriate and timely motion to amend.[2]

        3.        Breach-of-Fiduciary-Duty and Breach-of-the-Covenant-of-Good-Faith-and-Fair-Dealing Claims

Plaintiff finally claims that Beazley breached its fiduciary duty and the covenant of good faith and fair dealing to the ESOP, one of its insureds. Plaintiff is correct that, under Mississippi law, insurers owe certain duties to their insureds. In the liability-insurance context, an insurer is "under a solemn obligation to defend its insured, to negotiate and settle all claims made against its insured, first according to [the insured's] best interest, and then, secondly, according to [the insurer's] best interest." *Indem. Ins. Co. of N. Am. v. Guidant Mut. Ins. Co.*, 99 So. 3d 142, 150 (Miss. 2012) (quoting *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 255 So. 2d 667, 669 (Miss. 1971)) (first alteration in original). Insurance contracts also contain "an implied covenant of good faith and fair dealing in performance and enforcement." *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992); *see Langston v. Bigelow*, 820 So. 2d 752, 756 (Miss. 2002) ("Implicit in every contract of insurance is a covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefit of the agreement.").

But "the relationship between an insurance company and its insured is contractual in nature, with the rights and duties set out by the provisions of the insurance policy." *Sessoms v. Allstate Ins. Co.*, 634 So. 2d 516, 519 (Miss. 1993). And "an insurance carrier owes a duty under its insurance policy only to its insureds and to intended beneficiaries of the insurance contract." *Cowley v. Tex. Snubbing Control, Inc.*, 812 F. Supp. 1437, 1446 (S.D. Miss. 1992)

---

[2]If Plaintiff so moves, Beazley will obviously receive an opportunity to argue futility.

*aff'd sub nom. Cowley v. Stapleton*, 15 F.3d 180 (5th Cir. 1994).

The relationship between Beazley and the ESPOP is somewhat unusual, but it begins with their contractual relationship.  The Policy is a fiduciary-liability policy under which Beazley "shall pay on behalf of the **Insureds** all **Loss** resulting from any **Claim** for a **Wrongful Act** first made against the **Insureds**."  Policy [34-1] at 23.  The Policy also includes the following definitions:

> "'**Claim**' means . . . a written demand for monetary damages or non-monetary relief"; or "a civil . . . proceeding commenced by . . . the service of a complaint or similar pleading."  *Id*. at 24.
>
> "'**Fiduciary**' means a fiduciary of a **Plan** as defined by **ERISA**."  *Id*. at 26.
>
> "'**Insured**' means any **Insured Individual**, the **Company** and any **Plan**."  *Id*. at 27.
>
> "'**Plan**' means any plan, fund or program, regardless of whether it is subject to regulation under Tilte I of **ERISA** or any part thereof . . . which is . . . [a]n **ESOP** but solely with respect to **ESOP Administration**.  No **ESOP** is included within the definition of **Plan** with respect to **Claims** for any **Wrongful Act** other than **ESOP Administration** unless that **ESOP** is specifically included within the definition of **Plan** by written endorsement attached hereto."  *Id*. at 27–28.[3]
>
> "'**ESOP Administration**' means one of [sic] more of the following administrative duties or activities with respect to an **ESOP**:
>
> 1. giving notice to employees, participants or beneficiaries;
> 2. interpreting **ESOP** benefits;
> 3. handling records; or
> 4. effecting enrollment, termination or cancellation of employees, participants, or beneficiaries;
>
> "Provided, however, that **ESOP Administration** does not include the giving of

---

[3] By endorsement, the "Bruister & Associates Employee Stock Ownership Plan" was added to the definition of "Plan" in the Policy.  *Id*. at 10.  Plaintiff frequently references "Plans" in his memorandum, and to the extent he refers to any plans other than the one added by endorsement, they would not be considered "Insureds" outside the "ESOP Administration" context, which does not apply to this claim.

advice or counsel with respect to any matter relating to securities issued by the **Company**." *Id*. at 25.

"'**Loss**' means **Defense Costs** and **Indemnity Amounts**." *Id.* at 27.

"'**Wrongful Act**' means:

1. as respects a **Fiduciary**, a **Plan**, or the **Company**:

    (a) any actual or alleged violation of any of the responsibilities, obligations or duties imposed on **Fiduciaries** by **ERISA** in connection with a **Plan**; or

    (b) any matter claimed against an Insured by reason of his, her or its status as a **Fiduciary** of a **Plan**." *Id*. at 29–30.

When Sealey filed his initial ERISA suit, he "sought relief on behalf of the Plans," and named Bruister, Smith, Henry, and others as defendants. Am. Compl. [83] ¶ 38. He neither named the ESOP as a defendant nor sought relief from it. *Id*. The Secretary of Labor likewise sued Bruister and the other trustees seeking "relief on behalf of the Plans," *id*. ¶ 41, but named the ESOP as a nominal defendant "solely to assure that complete relief can be granted," *see Perez v. Bruister*, No. 3:13cv1001-DPJ-FKB, Second Am. Compl. [286] ¶ 9. According to the Amended Complaint, Bruister tendered these suits to Beazley. Am. Compl. [83] ¶ 46. Beazley then acknowledged that Bruister and the other individual trustees were named insureds and offered to defend them under reservation of rights. *Id*. ¶ 48. As described in the Amended Complaint, the reservation of rights letter did not mention the ESOP. *Id*. Nevertheless, when Bruister brought the Coverage Action, the ESOP was included as a defendant and ultimately joined in the Agreement. *Id*. ¶ 64.

All of this puts Beazley's relationship with the ESOP in an unusual, multilevel context. On the first level, in the underlying ERISA Actions, the ESOP was aligned as a plaintiff, making claims against Beazley's other insureds, including Bruister. At the next level, the ESOP was a

12

named plaintiff suing Beazley directly for a declaration of coverage. In both contexts, the ESOP was adverse to Beazley.

According to Plaintiff, the Court should focus on the relationship at the coverage level. Plaintiff contends that Beazley had a fiduciary duty to the ESOP during the Coverage Action that should have prevented Beazley from signing the Agreement because the ESOP was represented by a conflicted trustee and counsel. In other words, Beazley should have known Bruister and Johanson would take advantage of the ESOP—a named insured—and therefore refused to sign the Agreement. And by signing, Plaintiff states that the available coverage was reduced by $1 million to the ESOP's detriment.

As an initial matter, the pleaded facts fail to show a plausible claim that Beazley should have known Bruister was in conflict with the ESOP in the Coverage Action. It is certainly true that Bruister's interests conflicted with the ESOP's interests in the underlying ERISA Actions. There, the plaintiffs sought remedies on behalf of the ESOP, and Bruister contended that he breached no duties. But to the extent Plaintiff urges the Court to focus on the Coverage Action, the interests seem aligned. Beazley had taken the position that its Policy offered no coverage for the Rader or DOL action based on various policy provisions and exclusions. *See Bruister v. Beazley Ins. Co., Inc.*, No. 4:10cv136-HTW-LRA, Countercl. [16]. Both Bruister and the ESOP (and for that matter Johanson) desired as much coverage as they could get and sued Beazely for full coverage. Again, Plaintiff's key concern is that the Agreement ultimately reduced policy limits, but every dollar they were reduced exposed Bruister to another dollar of personal liability and Johanson to unfunded representation. Under these circumstances, the pleaded facts fail to offer a plausible claim that Beazley somehow breached duties by litigating against and then settling claims with the ESOP's lawful trustee. As Beazley states, if there was a problem in the

13

deal that was struck, the ESOP was represented, and it should look to its counsel and trustee.

But even assuming Bruister and the ESOP were not fully aligned, a plausible claim is still lacking. Beginning with fiduciary duties, "[i]t is axiomatic that a fiduciary duty must exist before a breach of the duty can occur." *Gibson v. Williams, Williams & Montgomery, P.A.*, No. 2014–CA–01488–SCT, 2016 WL 916618, at *11 (Miss. Mar. 10, 2016) (citation and quotation marks omitted). While insurers do have fiduciary duties in some contexts, *see Guidant Mut. Ins. Co.*, 99 So. 3d at 150, Plaintiff has cited no authority suggesting that an insurer owes a fiduciary duty to an adverse party in the context of coverage litigation. Such a duty would require an insurer that justifiably believes no coverage exists to put the insured's obvious desire for coverage on at least equal footing. *Id*. But coverage litigation is by nature adversarial, and an insurer does not breach duties to its insured by litigating its right to decline coverage where none exists under the contract. *See Stratford Ins. Co. v. Cooley*, 985 F. Supp. 665, 673 (S.D. Miss. 1996) ("Under no circumstances could it reasonably be concluded that [the insurer] acted in bad faith by instituting this declaratory judgment action to determine a legitimate coverage dispute rather than contributing its policy limits to a pre-litigation settlement."). The Court is aware of no authority supporting an insurer's fiduciary duty to an adverse party *in this context*. Plaintiff has not presented a plausible claim.[4]

As for the duty of good faith and fair dealing, the Court again finds no plausible claim. "[T]he duty requires abstinence by *all* parties from commission of wrongful conduct which injures the right of the another to receive the benefits of the agreement." *Andrew Jackson Life*

---

[4]For like reasons, there is no plausible claim that Beazley owed fiduciary duties to the ESOP with respect to the claims pursued on the ESOP's behalf against Beazley's insureds in the underlying ERISA Actions.

*Ins. Co. v. Williams*, 566 So. 2d 1172, 1188 (Miss. 1990) (citation and quotation marks omitted). Here, the Policy benefit is coverage for a "loss" if a named insured is subject to a "claim" for a "wrongful act." Policy [34-1] at 23. No such claim has ever been made against the ESOP, nor could it be. *See id.* at 29–30 (defining "wrongful act"). As Plaintiff acknowledges in his response, "no claim has been made against the Plans which would trigger the Plans' rights to indemnity or defense . . . ." Pl.'s Resp. [59] at 16 n.9.

Plaintiff addresses this issue by contending that the ESOP lost the full benefit of the original policy limits. But that argument blurs the line between the ESOP participants and the ESOP itself, casting both in the role of claimant. In other words, because the ESOP's right to indemnity or defense was never "triggered," *id.*, the real injury is the lack of remaining funds to pay the judgment Plaintiff obtained on behalf of the ESOP in the ERISA Actions. That judgment was the result of the ESOP's claims pursued against Beazley's other insureds—who did commit "wrongful acts" against the ESOP. Indeed this is the exact context for which the fiduciary-liability insurance was procured—to cover the ESOP fiduciaries if they faced claims for an alleged "wrongful act" "in connection with [the] Plan." Policy [34-1] at 23–30. Thus, under Plaintiff's theory, the ESOP was a claimant.[5]

Because the ESOP's policy benefits were never triggered and its claims were pursued against Beazley's other insureds, the case becomes analogous to the cases Beazley cites. It is well-recognized that when one insured sues another, the insurer's duties flow to the insured whose right to coverage has been invoked. *See Sessoms*, 634 So. 2d at 520; *Jordan v. State*

---

[5]It is worth at least noting that the injury was to the ESOP participants, who were not specifically identified as "Insureds" under the Policy. The parties do not directly address this issue, and it may delve into fine distinctions between a "Plan" and the participants to it. For that reason, the Court will not explore the issue.

*Farm Mut. Auto. Ins. Co.*, 774 F. Supp. 424, 425–26 (S.D. Miss.) *aff'd*, 946 F.2d 1084 (5th Cir. 1991); *see also* 14 Couch on Ins. § 203:28 ("An insurer is therefore generally permitted to settle claims in good faith on behalf of one insured, even if this results in exhaustion of the policy limits to the detriment of another insured being sued. Likewise, an insurer is also permitted to settle claims against one of its insureds without being hindered by potential liability to a co-insured who has not yet been sued." (footnotes omitted)). Here, Beazley's duties were to its insureds against whom claims had been made for "wrongful acts." Beazley did not breach any duties to the ESOP.

Plaintiff actually buttresses this finding when he argues that the ESOP was "essentially, [an] intended third-party claimant[]." Pl.'s Resp. [59] at 14. But he does so to argue that "once a covered claim accrues, a third-party liability policy cannot be rescinded or modified to reduce coverage, even by agreement between an insurer and an insured." *Id.* at 18. The argument is correct in broad terms, but under Mississippi law, a third-party claimant has no vested rights in insurance proceeds until it secures a judgment against the insured. *See Cowley*, 812 F. Supp. at 1450 ("Contrary to his assertion, it is not the case that [the plaintiff]'s rights in the insurance policy have been damaged by the parties' having effected a settlement which is detrimental to his rights; rather, as [third-party claimant] has no present interest in the insurance policy, the settlement at best could affect only potential rights."). Plaintiff did not secure a judgment against the insureds until long after the Agreement was executed. Plaintiff's claims for breach of fiduciary duty and the covenant of good faith and fair dealing are dismissed with prejudice.

IV.     Conclusion

The Court has considered all the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Beazley's Motion to Dismiss

for Lack of Subject Matter Jurisdiction [34] is denied, and Beazley's Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted [36] is granted.  Because Beazley has been dismissed, its Motion for Access to Court Filings in any Related Actions [72] is denied as moot.[6]  Dismissal is with prejudice, except for the ERISA claims not related to reformation, which are dismissed without prejudice.  The parties are instructed to contact Magistrate Judge Ball within 10 days of the entry of this Order to set the case for a telephonic case management conference, at which time he will set appropriate deadlines in the case, including a deadline for motions to amend the pleadings.

**SO ORDERED AND ADJUDGED** this the 29th day of March, 2016.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[6] If Plaintiff seeks and is granted leave to amend to cure the deficiencies in the ERISA claims against Beazley, Beazley may reassert the motion.